IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| TERRENCE MCNEAL, | |
| Plaintiff, | CIVIL ACTION NO.: 2:20-cv-105 |
| v. | |
| LINDA GETER, et al., | |
| Defendants. | |

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants Geter, Freeman, Burkett, Crum, Talley, and Goarcke's Motion to Dismiss.[1] Doc. 18. This Motion is fully briefed, with Plaintiff filing a Response, Defendants filing a Reply, and Plaintiff filing a Surreply. Docs. 25, 27, 28. For the following reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motion to Dismiss, **DISMISS** Plaintiff's claims against Defendants for failure to exhaust available administrative remedies, and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal. I further **RECOMMEND** the Court **DENY** Plaintiff leave to appeal *in forma pauperis*.

## PROCEDURAL HISTORY

Plaintiff brought this suit, asserting claims under <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971), against Defendants for their alleged use of excessive force, violating the Eighth Amendment. Docs. 1, 6. After conducting frivolity review,

---

[1] In Defendant Goarcke's declaration, he notes the correct spelling of his name is "Goarcke." Docs. 18-1, 27-3. Accordingly, the Clerk of Court is **DIRECTED** to change the spelling from "Goarke" to "Goarcke" on the docket.

the Court dismissed Plaintiff's claims against Defendants identified as All Administrators of FCI Jesup.  Doc. 7.  Plaintiff was permitted to proceed with his Eighth Amendment excessive force claims against Defendants Freeman, Burkett, Crum, Talley, and Goarcke and with a supervisory liability claim against Defendant Geter.  Id.

Plaintiff's allegations relate to his incarceration at the Federal Correctional Institution in Jesup, Georgia ("FCI Jesup").  Doc. 1.  Specifically, Plaintiff alleges, because of the Bureau of Prisons' nationwide prison lockdown, tensions between prison officials and inmates had been escalating at FCI Jesup.  Id. at 4.  Those tensions came to a head on August 5, 2020, when the staff at FCI Jesup "engineered" a riot and attacked inmates, violating prison policy and the Eighth Amendment.  Id. at 1, 5–7.  Plaintiff alleges Defendants played various roles in the orchestration of the riot and subsequent attack.  Docs. 1, 1-1, 6.  Based on Plaintiff's allegations, he was permitted to proceed with Eighth Amendment excessive force claims against Defendants.  Docs. 4, 7.

Defendants argue Plaintiff's claims should be dismissed because he failed to exhaust available administrative remedies prior to filing suit, he cannot pursue a First Amendment retaliation claim under Bivens,[2] and he has not alleged conduct overcoming qualified immunity as to Defendants Geter, Burkett, Crum, Taller, and Goarcke.  Doc. 18 at 1; Doc. 27.  Plaintiff argues his failure to exhaust should be excused and opposes the remainder of Defendants' Motion to Dismiss.  Docs. 25, 28.

---

[2]  Plaintiff was not permitted to proceed on a First Amendment claim following frivolity review. Doc. 4 at 1.  Further, Plaintiff, in his Response, confirms he is not pursuing a Frist Amendment retaliation claim.  Doc. 25 at 3.  Thus, there is no need to address whether Plaintiff could pursue a First Amendment claim under Bivens because it is clear he is not pursuing such a claim.

2

**DISCUSSION**

**I.    Prison Litigation Reform Act's Exhaustion Requirements**

Under the Prison Litigation Reform Act ("PLRA"), an incarcerated individual must properly exhaust all available administrative remedies—the prison's internal grievance procedures—before filing a federal lawsuit to challenge prison conditions.  42 U.S.C. § 1997e(c)(1); see Jones v. Bock, 549 U.S. 199, 202 (2007); Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000).  The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1208 (11th Cir. 2015) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006)).

Proper exhaustion is mandatory, and courts have no discretion to waive it or excuse it based on improper or imperfect attempts to exhaust, no matter how sympathetic the case or how special the circumstances.  Ross v. Blake, 136 S. Ct. 1850, 1857 (2016) (finding the PLRA requires exhaustion "irrespective of any 'special circumstances'" and its "mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account"); Jones, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").  Moreover, courts may not consider the adequacy or futility of the administrative remedies afforded to the inmate.  Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (noting an inmate's belief administrative procedures are futile or needless does not excuse the exhaustion requirement).  Rather, courts may only determine whether administrative remedies are available and whether the inmate properly exhausted these remedies prior to bringing his federal claim.  Id.

Proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other critical procedural rules.  Woodford, 548 U.S. at 91–92; Bryant v. Rich, 530

3

F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005))).  "[A]n inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000); Gooch v. Tremble, No. 1:18-cv-058, 2018 WL 2248750, at *3 (S.D. Ga. Apr. 20, 2018) ("[B]ecause exhaustion of administrative remedies is a 'precondition' to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure before initiating this suit.") (quoting Higginbottom, 223 F.3d at 1261).  An incarcerated individual cannot "cure" an exhaustion defect by properly exhausting all remedies after filing suit. Terry, 491 F. App'x at 83; Harris, 216 F.3d at 974.

Moreover, to properly exhaust, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review compromising the administrative grievance process. Bryant, 530 F.3d at 1378; see also Okpala v. Drew, 248 F. App'x 72, 73 (11th Cir. 2003) (affirming sua sponte dismissal for failure to exhaust when a federal inmate submitted a written complaint and appealed the decision but filed his lawsuit before receiving the final decision on his appeal); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

**II.    Standard of Review for Exhaustion**

A defendant may raise an inmate-plaintiff's failure to exhaust as an affirmative defense. Jones, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA . . . ."); Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016); Whatley I, 802 F.3d at

1209.  When so raised, "[d]efendants bear the burden of proving that the plaintiff failed to exhaust his administrative remedies."  Pearson, 665 F. App'x at 867 (quoting Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008)); see also Trevari v. Robert A. Deyton Det. Ctr., 729 F. App'x 748, 752; White v. Berger, 709 F. App'x 532, 541 (11th Cir. 2017); Dimanche v. Brown, 783 F.3d 1204, 1214 (11th Cir. 2015); Turner, 541 F.3d at 1082.

While exhaustion is a mandatory requirement for bringing suit, one exception exists.  Ross, 136 S. Ct. at 1858 ("The PLRA contains its own, textual exception to mandatory exhaustion.").  "Under the PLRA, a prisoner need exhaust only 'available' administrative remedies."  Id. at 1856; Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017).  Drawing from the plain language of the word "available," the United States Supreme Court has concluded "an inmate is required to exhaust . . . only those[ ] grievance procedures that are 'capable of use' to 'obtain some relief for the action complained of.'"  Ross, 136 S. Ct. at 1858–59; Turner, 541 F.3d at 1084 (quoting Goebert v. Lee County, 510 F.3d 1312, 1322–23 (11th Cir. 2007) ("A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of its purpose.'")).  "Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available."  Turner, 541 F.3d at 1084.

Courts recognize "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief."  Ross, 136 S. Ct. at 1859.  First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates."  Id.; Turner, 541 F.3d at 1083 (noting the PLRA "does not require inmates to craft new procedures when prison officials demonstrate . . .

5

they will refuse to abide by the established ones"). Secondly, exhaustion is not required when an administrative procedure is "so opaque" or "unknowable" "no ordinary prisoner can discern or navigate it." Ross, 136 S. Ct. at 1859–60. Finally, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation[,]" such thwarted inmates are not required to exhaust. Id. at 1860; Abram v. Leu, 759 F. App'x 856, 860 (11th Cir. 2019) ("An administrative remedy may be unavailable when prison officials interfere with a prisoner's pursuit of relief."); Dimanche, 783 F.3d at 1214 ("The PLRA does not 'require[] an inmate to grieve a breakdown in the grievance process.'" (quoting Turner, 541 F.3d at 1083)); Miller v. Tanner, 196 F.3d 1190, 1194 (11th Cir. 1999) (finding exhaustion does not require plaintiff-inmates "to file an appeal after being told unequivocally that appeal of an institution-level denial was precluded").

In Turner v. Burnside, the Eleventh Circuit laid out a two-part test for resolving motions to dismiss for failure to exhaust administrative remedies under § 1997e(a). 541 F.3d at 1082. First, courts "look[] to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Id.; see also Bracero v. Sec'y, Fla. Dep't of Corr., 748 F. App'x 200, 201 (11th Cir. 2018). This prong of the Turner test ensures there is a genuine dispute of material fact regarding the inmate-plaintiff's failure to exhaust. Glenn v. Smith, 706 F. App'x 561, 563–64 (11th Cir. 2017) (citing Turner, 541 F.3d at 1082); Pavao, 679 F. App'x at 824. "The court should dismiss [the action] if the facts as stated by the prisoner show a failure to exhaust." Abram, 759 F. App'x at 860 (quoting Whatley I, 802 F.3d at 1209); Turner, 541 F.3d at 1082 ("This process is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082; see also Glenn, 706 F. App'x at 563–64; Pearson, 665 F. App'x at 867 ("At the second step, the court [is] permitted to make factual findings to resolve the issue of exhaustion."). After resolving the factual disputes, the court then decides whether, "based on those findings, defendants have shown a failure to exhaust." Bracero, 748 F. App'x at 201 (quoting Whatley I, 802 F.3d at 1209). Additionally, "[w]hen ruling on a motion to dismiss for failure to exhaust administrative remedies, the court may consider evidence outside the pleadings." Berger, 709 F. App'x at 541 n.4 (citing Bryant, 530 F.3d at 1376); Glenn, 706 F. App'x at 563–64; Singleton v. Dep't of Corr., 323 F. App'x 783, 785 (11th Cir. 2009) (citing Bryant, 530 F.3d at 1376) ("A district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record.").

**III.   Applying Turner**

Defendants argue Plaintiff's Complaint should be dismissed because he did not pursue any administrative remedy relating to his excessive force claim. Doc. 18 at 8; Doc. 27.

    **A.   The Bureau of Prisons' ("BOP") Administrative Remedies**

The BOP has established an administrative remedy procedure through which an inmate may seek review of a grievance related to any aspect of his imprisonment. 28 C.F.R. § 542.10 *et seq*. The Administrative Remedy Program applies to all inmates incarcerated in penal institutions operated by the BOP. § 542.10(b) ("[The Administrative Remedy Program] applies to all inmates in institutions operated by the Bureau of Prisons . . . ."). Under the applicable Regulations, an inmate must generally first seek to resolve an issue of concern informally by

presenting the issue to correctional staff. § 542.13(a). If this does not resolve the matter, an inmate must submit a formal written administrative remedy request ("BP-9") within 20 calendar days of the incident giving rise to the grievance. § 542.14(a). If unsatisfied with the Warden's response, an inmate may appeal with the Regional Director ("BP-10") within 20 days of the Warden's response. § 542.15(a). If dissatisfied with the Regional Director's response, an inmate may take a final appeal ("BP-11") to the BOP's Office of General Counsel in Washington, D.C., within 30 days of when the Regional Director signed the response. Id. Appeal to the BOP's Office of General Counsel is the final step in the BOP's administrative remedy process. Id. An inmate must complete all three steps of the administrative remedies process to have exhausted his administrative remedies.

### B. Plaintiff Did Not Exhaust Available Administrative Remedies

Defendants argue Plaintiff did not exhaust his available administrative remedies because he failed to file a timely BP-9 or seek an extension to file an untimely remedy request. Doc. 18 at 9–12; Doc. 27 at 1–5. Plaintiff, on the other hand, states any administrative remedies were unavailable to him while in the Special Housing United ("SHU") following the August 5, 2020 events and filing an out-of-time BP-9, once released from the SHU, would have been futile because there were no grounds for an extension. Doc. 25 at 2–3.

#### 1. *Plaintiff's claim survives under Turner step one.*

At step one under Turner, the Court must consider the "factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Turner, 541 F.3d at 1080–82. Plaintiff's allegations and Defendants' allegations plainly conflict. While both parties agree Plaintiff did not file a written request relating his excessive force claims against Defendants, Plaintiff asserts he did not pursue

8

administrative remedies because he was never provided with a BP-9 form or the opportunity to request one during the time for filing a grievance. Doc. 25 at 2; Doc. 28 at 2. Indeed, Plaintiff contends he attempted to get a form from Defendant Goarcke but was ignored and the only other prison officials who came to his cell were there to deliver meals and typically refused to provide BP-9 forms. Id. Thus, under Plaintiff's allegations, administrative remedies were never available because a prison official who could provide Plaintiff a form never visited him in the SHU. Moreover, Plaintiff contends any attempt to inform him of his available administrative remedies while in the SHU were inadequate, as Plaintiff had just been attacked and could not comprehend such information. Id. Once released from the SHU 21 days after the riot, Plaintiff explains he did not file a grievance because he was never informed he could receive an extension and BOP regulations did not allow for an extension in his case. Id.; Doc. 28 at 1.[3]

Proper exhaustion of Plaintiff's claims requires him to exhaust his administrative remedies by following BOP procedures. However, exhaustion may be excused where it is unavailable. Looking solely at Plaintiff's Response and Surreply, his allegations are enough to survive a motion to dismiss for failure to exhaust his administrative remedies under the first step of the Turner test. Plaintiff states his attempts and requests for a BP-9 form were ignored and he was not eligible to file an untimely grievance under prison policy. Thus, the administrative remedies were unavailable to him.

---

[3] Plaintiff asserted in his Complaint he did not pursue any administrative remedies after being released from the SHU because Defendant Goarcke refused to provide him with a form. Doc. 1 at 2. However, Plaintiff does not take that position in his Response or Surreply to Defendants' Motion to Dismiss. The Court will consider this argument abandoned. Furthermore, there is no indication in the record Plaintiff was unable to obtain grievance forms after he was released from the SHU.

### 2. Plaintiff's claim fails under Turner step two.

The parties' filings present a factual question under Turner step two. Specifically, the parties disagree about the availability of BP-9 forms while Plaintiff was in the SHU and whether Plaintiff could have requested an extension to file an untimely BP-9 under the prison's policy.

"[F]actual determinations regarding exhaustion (or lack thereof) under § 1997e(a) often pose problems for the district courts." Womack v. Sikes, No. CV 307-042, 2008 WL 4104148, at *5 (S.D. Ga. Sept. 4, 2008). Nevertheless, a district judge may act as a factfinder in resolving whether an inmate has exhausted his non-judicial remedies. Bryant, 530 F.3d at 1374 (citing Wyatt v. Terhune, 315 F.3d 1108, 1119–20 (9th Cir. 2003)). The Supreme Court has explained "discredited testimony" cannot be relied upon to resist summary judgment, and courts in this district have applied that principle equally when making factual determinations under Turner step two. See Womack, 2008 WL 4104148 at *5–6 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256–57 (1986)). Thus, to the extent Plaintiff relies upon his own self-serving allegations, the Court properly considers whether a "reasonable juror would undertake the suspension of disbelief necessary to credit the allegations." Id. (citing Jeffreys v. City of New York, 426 F.3d 549, 555 (2d Cir. 2005).

This analysis begins with the burden. Failure to exhaust is an affirmative defense which, like other affirmative defenses, puts the burden of proof squarely on defendants. See Presley v. Scott, 679 F. App'x 910, 912 (11th Cir. 2017) ("It is the defendant's burden to prove a plaintiff has failed to exhaust his administrative remedies, which requires evidence that the administrative remedies are available to the plaintiff."); Berger, 709 F. App'x at 542 (finding "[t]he district court misapplied the law in penalizing [plaintiff] for failing to take advantage of remedies the defendants failed to prove were available to him"); Whatley I, 802 F.3d at 1209; Turner, 541

F.3d at 1082–83; see also Abram, 759 F. App'x at 861 (remanding to determine whether administrative remedies were available to plaintiff where plaintiff alleged prison staff refused to provide grievance forms and plaintiff provided an affidavit from another inmate who witnessed plaintiff's request for forms and subsequent denial).  Even when a plaintiff relies only "upon his own self-serving allegations," courts should not dismiss the action outright but should "consider[] whether a 'reasonable juror would undertake the suspension of disbelief necessary to credit the allegations.'"  Womack, 2008 WL 4104148, at *6 (quoting Jeffreys, 426 F.3d at 555).

Before a court resolves disputed factual issues in a motion to dismiss, the court must ensure "the parties ha[d] sufficient opportunity to develop a record."  Bryant, 530 F.3d at 1376 & n.14; see also Glenn, 706 F. App'x at 564 ("[I]f there are disputed factual issues, the court must allow the parties to develop the record . . . ."); Porter v. Sightler, 457 F. App'x 880, 882 (11th Cir. 2012); Singleton, 323 F. App'x at 785 (finding plaintiff-inmate had sufficient opportunity to develop the record when plaintiff filed "numerous pleadings, affidavits, and exhibits regarding the exhaustion issue").  Here, both parties have submitted argument or evidence on the issue of exhaustion, demonstrating the parties have had ample opportunity to develop the record.

The materials in the record relied upon by the parties do not support Plaintiff's contention administrative remedies were unavailable to him while in the SHU.  Plaintiff contends he saw Defendant Goarcke on a single occasion while in the SHU and tried to get Defendant Goarcke's attention to obtain a grievance form but was ignored.  Doc. 25 at 2.  Further, Plaintiff states other prison officials routinely refused to address requests for grievance forms.  Id.

Defendants, on the other hand, have presented evidence BP-9 forms are routinely made available to inmates in the SHU and inmates are informed of their right to file grievances while in the SHU.  Doc. 18 at 10; Doc. 18-1 at 3; Doc. 18-2 at 3.  Defendant Goarcke denies Plaintiff

11

ever requested a BP-9 form from him and denies he ever refused to provide Plaintiff a grievance form, whether in the SHU or anywhere else.  Doc. 18-1 at 3; Doc. 27-3 at 3.  In fact, Defendant Goarcke denies he was in the SHU while Plaintiff was housed there, and prison logs support his contention.  Doc. 27-3 at 3.  Defendants have also provided evidence showing prison officials routinely came to Plaintiff's SHU cell from August 6 to August 27, 2020, and he could have requested a grievance form from these individuals.  Id. at 2–3, 5–48; see also Doc. 18-2 at 3 (explaining staff regularly comes to the SHU and provides administrative remedy forms).  Finally, Defendants have provided evidence showing other inmates were able to file grievance forms while in the SHU at the same time as Plaintiff—August of 2020.  Doc. 18 at 10; Doc. 18-2 at 3, 10–12.  This evidence plainly and convincingly contradicts Plaintiff's contention Defendant Goarcke refused to provide him with a form or he was unable to request a form from other prison officials while he was in the SHU.  I find a reasonable juror would not undertake the suspension of disbelief necessary to credit Plaintiff's allegations.  Therefore, I conclude Plaintiff failed to exhaust his available administrative remedies.

Even assuming Plaintiff was unable to file a BP-9 while in the SHU, he still failed to exhaust available administrative remedies.  As explained above, inmates may request an extension if they fail to file their grievance within the 20-day window.  See 28 C.F.R. § 542.14(a),(b).  Plaintiff contends the BOP's policy only allows for an extension under certain circumstances, none of which are present in this case.  However, Plaintiff misinterprets the policy.  Section 542.14 provides:

> Where the inmate demonstrates a valid reason for delay, an extension in filing time may be allowed.  In general, valid reason for delay means a situation which prevented the inmate from submitting the request within the established time frame.  Valid reasons for delay include the following: an extended period in-transit during which the inmate was separated from documents needed to prepare the Request or Appeal; an extended period of time during which the inmate was

> physically incapable of preparing a Request or Appeal; an unusually long period taken for informal resolution attempts; indication by an inmate, verified by staff, that a response to the inmate's request for copies of dispositions requested under § 542.19 of this part was delayed.

Thus, the BOP's policy provides a general rule for extensions—a valid reason for delay or when a situation prevented an inmate from submitting the request. The policy then provides a list of valid reasons for delay, including transit, physical incapacity, or an unusually long period of attempted informal resolution. This list is non-exhaustive, as indicated by use of the word "include." See Estate of Wallace v. C.I.R., 965 F.2d 1038, 1046 (11th Cir. 1992) ("We agree that the word 'including' makes the list of activities [in the statute] nonexclusive."). The list provides examples of situations where an extension would be granted, but it does not mean extensions will not be granted in other situations, such as the one Plaintiff contends was present here—the unavailability of grievance forms while in the SHU. Abram v. Leu, 848 F. App'x 868, 872 (11th Cir. 2021) ("A refusal to provide the forms necessary to initiate the grievance process appears to qualify as such 'a situation which prevented the inmate from submitting the request within the established time frame.'"). Thus, even assuming grievance forms were unavailable in the SHU, Plaintiff still failed to exhaust available administrative remedies because he failed to attempt to obtain an extension to file an out-of-time grievance. Id. at 872–73 (explaining a prisoner-plaintiff fails to exhaust his administrative remedies where he does not attempt to obtain an extension and file an untimely grievance).

Accordingly, I **RECOMMEND** the Court **GRANT** Defendants' Motion to Dismiss, **DISMISS** Plaintiff's claims against Defendants for failure to exhaust available administrative remedies, and **DIRECT** the Clerk of Court enter the appropriate judgment of dismissal as to these Defendants. Doc. 18. Because I have recommended dismissal based on Plaintiff's failure to exhaust, I decline to address Defendants' other arguments for dismissal.

### IV. Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has not yet filed a notice of appeal, it is proper to address these issues now. See Fed. R. App. P. 24(a)(3) (trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'" Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis, there are no non-frivolous issues to raise on appeal, and an appeal on these claims would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

14

**CONCLUSION**

For the foregoing reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motion to Dismiss, **DISMISS without prejudice** Plaintiff's claims against Defendants for failure to exhaust available administrative remedies, and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal. Doc. 18. I further **RECOMMEND** the Court **DENY** Plaintiff leave to appeal *in forma pauperis*.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection the Magistrate Judge failed to address a contention raised in the Complaint or an argument raised in a filing must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final

judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 31st day of January, 2022.

*[signature]*

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA